UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| WILLIE HARRISON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | No.  3:18-CV-2205-GCS |
| JACQUELINE CHLEBOWSKI, JONI CUMMINS, PHILLIP MARTIN, and VIPIN SHAH, | ) |  |
| Defendants. | ) |  |

# MEMORANDUM and ORDER

**SISON, Magistrate Judge:**

## INTRODUCTION

Now before the Court is Defendant Jacqueline Chlebowski's, Joni Cummins's and Vipin Shah's motion for summary judgment for failure to exhaust administrative remedies (Doc. 37, 38). Chlebowski and Cummins seek summary judgment for the claims against them in Count 1.  Shah seeks summary judgment for the claims against him in Count 2.[1]  Also before the Court is Defendant Philip Martin's motion for summary judgment regarding the exhaustion of administrative remedies (Doc. 61, 62).  Martin seeks summary judgment for the claims against him in Count 2.  Plaintiff Willie Harrison

---

[1] Shah concedes that Harrison fully exhausted his administrative remedies as to Harrison's claim against Shah contained in Count 1.

opposes both motions (Doc. 52, 63). Based on the following, the undersigned **GRANTS** the motions for summary judgment on the issue of exhaustion of administrative remedies.

Pursuant to 42 U.S.C. § 1983, Harrison filed his amended complaint for deprivations of his constitutional rights that occurred at Robinson Correctional Center ("Robinson") (Doc. 7). After conducting the preliminary review pursuant to 28 U.S.C. § 1915A, Harrison was allowed to proceed in Count 1 on an Eighth Amendment deliberate indifference claim against Shah, Cummins and Chlebowski regarding the treatment of his Crohn's disease and related symptoms, post-surgery care and an MRSA infection. Harrison was also permitted to proceed in Count 2 on a first amendment retaliation claim against Shah and Martin because after Harrison filed grievances, he was transferred from the infirmary to the general population with an open wound, colostomy bag and untreated MRSA.

On January 21, 2020, the Court held a hearing on the summary judgment motions and took the matter under advisement. During the hearing, the Court heard testimony from Harrison. As the motion for summary judgment is ripe, the Court turns to address the merits of the motions.

## FACTS

The following facts are taken from the record and presented in the light most favorable to Harrison, the non-moving party, and all reasonable inferences are drawn in

his favor. *See Ricci v. DeStanfano*, 557 U.S. 557, 586 (2009).

Harrison filed his initial complaint on December 26, 2018 and his amended complaint on January 17, 2019 (Doc. 1, 7). Harrison's allegations against Cummins in Count 1 relates to his medical treatment of his Crohn's disease "[f]or the past 18 months prior to May 30, June 2, and June 4, 2018) (Doc. 7, p. 6; Doc. 8, p. 2). Harrison's allegations against Chlebowski in Count 1 states: "[u]pon my return to the prison facility on June 21, 2018, Approximately, 8 days later, Nurse Chlebowski administered a shot for my post-surgery Aftercare. Prior to sticking me, she did not clean the area or wear any gloves." (Doc. 7, ps. 9-10; Doc. 8, p. 3). With respect to Count 2, Harrison's retaliation claim against Shah and Martin relates to a housing transfer on November 8, 2018 (Doc. 7, p. 11; Doc. 8, p. 3).

On February 2, 2018, Harrison filed a grievance, #18-069, against Cummins for the treatment of his Crohn's disease. Harrison appealed that grievance on March 16, 2018. The Administrative Review Board ("ARB") received the grievance on September 17, 2018, and the ARB, through Sarah Johnson, returned the grievance on September 20, 2018, for not being timely.

On September 25, 2018, Harrison filed a grievance, #18-465, against Chlebowski regarding pain medication. The grievance officer recommended that the grievance be denied on October 16, 2018. Harrison appealed the grievance on November 13, 2018, and the ARB received the grievance on November 19, 2018. The ARB, through Sarah Johnson, denied the grievance on December 18, 2018, and John Baldwin, the Acting Director of the

IDOC, concurred on December 20, 2018. The date of the incident in this grievance was September 25, 2018, and the grievance does not contain any allegations about a shot for post-surgery care on or around June 21-29, 2018.

Thereafter on October 18, 2018, Harrison filed a grievance, #18-476, relating to an infection and pain medication prescription. Harrison appealed this grievance on November 2, 2018, and the ARB received the grievance on November 7, 2018. The ARB, through Sarah Johnson, denied the grievance on November 21, 2018, and John Baldwin concurred on November 29, 2018. The date of the incident in this grievance was October 16, 2018. The grievance did not contain any allegations about a shot for post-surgery care on or around June 21-29, 2018.

On November 3, 2018, Harrison filed a grievance relating to pain medicine against Nurse Parker, which also referenced Cummins. Harrison marked the grievance as an emergency. On November 15, 2018, the Chief Administrative Officer deemed it a non-emergency and returned the grievance to Harrison to be submitted in the normal manner. Harrison appealed the grievance directly to the ARB which returned the grievance on December 10, 2018. This grievance referenced an incident that occurred on November 3, 2018 and did not contain allegations from prior to May 30, 2018.

On November 5, 2018, Harrison filed a grievance, #18-544, against Martin for harassment and retaliation. Harrison appealed this grievance on December 1, 2018, and the ARB, through Sarah Johnson, denied the grievance on January 15, 2019, for failure to comply with DR 504.

On November 7, 2018, Harrison filed a grievance, #18-553, against Martin for harassment and retaliation. On November 13, 2018, Harrison filed a grievance, #18-584, alleging that he was retaliated against by Martin. This grievance also named Shah. Harrison appealed these grievances on December 5, 2018. The ARB, through Sarah Johnson, received the grievances on December 14, 2018 and denied them on January 16, 2019. John Baldwin, the Acting Director of the IDOC, concurred on January 17, 2019.

On November 11, 2018, Harrison filed another grievance, #18-582, against Martin and Shah. Harrison appealed that grievance on December 28, 2018. The ARB, through Sarah Johnson, denied the grievance on February 5, 2019, and John Baldwin concurred on February 9, 2019.

Also, on November 11, 2018, Harrison filed a grievance, #18-753 e med, against Martin and Shah. Harrison appealed the grievance on January 25, 2019. Sarah Johnson of the ARB denied the grievance on February 22, 2019, and John Baldwin concurred on February 25, 2019.

On November 14, 2018, Harrison filed another grievance, #18-560e, which named Chlebowski and related to MRSA and antibiotics. Harrison appealed the grievance on December 5, 2018, and the ARB received the grievance on December 14, 2018. On December 31, 2018, the ARB, through Sarah Johnson, returned the grievance to Harrison because he did not provide the incident date and thus failed to comply with DR 504.

Thereafter, on December 3, 2018, Harrison filed a grievance, #18-662e, against Cummins for the treatment of his colostomy bag. Harrison appealed that grievance on

January 3, 2019. The ARB, through Sarah Johnson, denied the grievance on January 15, 2019, and John Baldwin concurred on January 16, 2019.

During the hearing, Harrison testified that he understands the steps regarding the exhaustion of administrative remedies. Harrison likewise understood such steps when he filed his grievances with the prison and when he filed his complaint and amended complaint. Harrison testified that he has had Crohn's disease for the past 18 years, that he suffers from asthma since birth and that he does not have any mental health issues. As to Chlebowski, Harrison conceded that he did not file a grievance regarding the medical claim against her that occurred on or around June 21 – 29, 2018. As to Shah, Harrison averred that he was able to file a grievance and exhaust his administrative remedies as to the deliberate indifference claim against him contained in Count 1.

**LEGAL STANDARDS**

"Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing

> on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies,
> and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent
> (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining
> that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the Illinois Department of Corrections, Harrison was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably

feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures further allow some grievances to be submitted directly to the ARB for consideration. *See* 20 ILL. ADMIN. CODE § 504.870(a). Those grievances include the following:

1) Decisions regarding protective custody placement, including continued placement in or release from protective custody.

2) Decisions regarding the involuntary administration of psychotropic medication.

3) Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned.

4) Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.

20 ILL. ADMIN. CODE § 504.870(a)(1-4).

## ANALYSIS

Cummins and Chlebowski argue that Harrison failed to exhaust his administrative remedies with respect to the claims against them in Count 1. Shah argues that Harrison failed to exhaust his administrative remedies in a timely manner with respect to the retaliation claim against him in Count 2. Similarly, Martin argues that Harrison failed to exhaust his administrative remedies against him in Count 2 because he did not permit the ARB to review and decide his appealed grievances prior to filing suit. Harrison asserts that he has filed numerous grievances related to his medical treatment

during his incarceration in the Illinois Department of Corrections dating back to at least 2016 and that he should be permitted to conduct more discovery on the matter.

First, the Court addresses Harrison's argument regarding the need for discovery. The Court finds that additional discovery is not necessary and will not benefit the Court in rendering a decision on the exhaustion issue. Harrison's grievances and cumulative counseling summary, the relevant documents needed to determine the limited issue of exhaustion of administrative remedies, were produced to Harrison and submitted to the Court.

Next, the Court notes that the record indicates that Harrison was aware of the grievance procedures at Robinson, that Harrison filed numerous grievances while there and that the prison officials at Robinson responded to his many grievances.[2] Clearly, administrative remedies were available to Harrison, and he was taking full advantage of them.

Further, it is evident that Harrison prematurely filed suit against Shah and Martin (in Count 2) prior to fully exhausting his administrative remedies. Harrison filed his original complaint on December 26, 2018 (Doc. 1). Harrison filed his amended complaint on January 17, 2019 (Doc. 7). The ARB returned and denied his various grievances on January 15, 2019, January 17, 2019, February 9, 2019, and February 25, 2019. All of these returns and denials post-date the filing of Harrison's suit on December 26, 2018. As such,

---

[2] Harrison's records from the ARB contain a total of 238 pages.

Harrison did not receive any responses or denials regarding any of his grievances against Martin or Shah related to the allegations in Count 2 prior to Harrison filing his initial complaint on December 26, 2018.

As to Chlebowski, Harrison conceded that he did not file a grievance regarding the claims against her in Count 1 of the complaint. The record also does not reflect any grievances against Chlebowski for deliberate indifference to medical care during the time period from June 21 – 29, 2018.[3]

With respect to Cummins, the Court likewise finds that Harrison failed to exhaust his administrative remedies as to the claims against her. Harrison's December 3, 2018 grievance, #18-662, was still pending when he initially filed suit. The ARB denied the grievance on January 15, 2019, and Baldwin concurred on January 16, 2019. Thus, this grievance was not fully exhausted prior to Harrison filing his complaint on December 26, 2018.

With respect to Harrison's November 3, 2018 grievance against Cummins, it was also not fully exhausted. The ARB returned the grievance because Harrison failed to address the matter at the facility level. Furthermore, the grievance did not mention any allegations that are contained in Harrison's complaint against Cummins, *i.e.*, the medical treatment he received prior to May 30, 2018. Similarly, Harrison's February 2, 2018

---

[3] The June 21-29th dates are the relevant dates for the analysis because Harrison alleges that he returned to the prison on June 21st and that eight days later Chlebowski administered the post-surgery after care shot of which Harrison complains about.

grievance, #18-069, was not fully exhausted as the ARB returned the grievance as untimely because it was outside the 30 day window for an appeal.

In his response in opposition, Harrison relies on *White v. Burkowski*, 800 F.3d 392 (7th Cir. 2015) for the proposition that the filing of a grievance is not necessary if it would be academic and could not provide a remedy (Doc. 52, p. 4). In *White*, the Seventh Circuit held that administrative remedies were not available to the plaintiff in a case where the plaintiff alleged poor prenatal care that resulted in birth defects for the plaintiff's baby. *Id.* at 397. The Seventh Circuit reasoned that there was no remedy for the jail to grant for the baby's birth defects once the baby was born because the prenatal phase was over. *Id.* at 395. Thus, *White* stands for the proposition that administrative remedies are unavailable where the harm caused can no longer be rectified by the grievance process.

*White*, however, is distinguishable from the instant case and is therefore not applicable. Here, the gravamen of Harrison's deliberate indifference claim in Count 1 that the defendants were not properly treating his Crohn's Disease and as a result, he suffered unnecessary pain. This is qualitatively different from the permanence of the injury suffered in *White*, *i.e.*, the baby's birth defects, which could no longer be rectified once the baby was born. Here, the pain suffered by Harrison could have been alleviated if his treatment regimen changed and thus, the grievance process could still conceivably rectify the harm complained about by Harrison. As for Harrison's retaliation claim in Count 2, he alleges that he was transferred from the infirmary. However, the relief for

this grievance was to be transferred back to the infirmary, which likewise could have been accomplished through the grievance process.[4]

Given the above facts, Harrison did not exhaust his administrative remedies as to his claims against Cummins and Chlebowski in Count 1. Harrison likewise did not exhaust his administrative remedies as to his claims against Shah and Martin in Count 2. A prisoner cannot properly exhaust his administrative remedies if he files suit during the pendency of the grievance process; nor can a prisoner file suit and then exhaust administrative remedies while the suit is pending. See *Ford*, 362 F.3d at 398.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions for summary judgment on the issue of exhaustion (Doc. 37, 61). The Court **DISMISSES without prejudice** Harrison's claims against Chlebowski and Cummins in Count 1 and Harrison's claims against Shah and Martin in Count 2 for failure to exhaust administrative remedies. Thus, the Court **DISMISSES without prejudice** Chlebowski, Cummins and Martin. The remaining claim in this case is Harrison's claim against Shah in Count 1.

---

[4] Harrison also relies on two unpublished cases for the same proposition espoused in *White*. *See, e.g., Johnson v. United States*, No. 14-C-10461, 2016 WL 7440270 (N.D. Ill. Dec. 27, 2016); *Pollard v. Dart*, No. 15-CV-4638, 2016 WL 5404978 (N.D. Ill. Sept. 28, 2016). However, the Court likewise finds these cases unpersuasive and declines to follow them given the permanence of the harm alleged in those cases, *i.e.*, permanent complications from untreated facial fractures in *Johnson* and irreversible damage to plaintiff's hand in *Pollard*.

**IT IS SO ORDERDED.**

**Date: February 5, 2020.**

_____
**GILBERT C. SISON**
**United States Magistrate Judge**

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.02.05 14:51:09 -06'00'