UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE HARRISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:18-cv-02205-GCS |
| | ) |
| VIPIN SHAH, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

I.   INTRODUCTION AND BACKGROUND

This matter is now before the Court on Defendant Shah's motion for summary (Doc. 84, 85). Harrison filed an opposition (Doc. 86). Based on the following, the Court **GRANTS** the motion for summary judgment.

Pursuant to 42 U.S.C. § 1983, Harrison filed his amended complaint for deprivations of his constitutional rights that occurred at Robinson Correctional Center ("Robinson") (Doc. 7). On January 29, 2019, after conducting the preliminary review pursuant to 28 U.S.C. § 1915A, Harrison was allowed to proceed in Count 1 on an Eighth Amendment deliberate indifference claim against Shah, Cummins and Chlebowski regarding the treatment of his Crohn's disease and related symptoms, post-surgery care, and an MRSA infection. Harrison was also permitted to proceed in Count 2 on a first amendment

retaliation claim against Shah and Martin because after Harrison filed grievances, he was transferred from the infirmary to the general population with an open wound, a colostomy bag, and an untreated MRSA infection. (Doc. 8). On September 17, 2019, the Court appointed Andrea Stanley as counsel for Harrison. (Doc. 51).

On January 21, 2020, the Court held a hearing on the motions for summary judgment regarding the issue of exhaustion of administrative remedies and took the matter under submission. (Doc. 74). Thereafter, the Court granted the motions for summary judgment and dismissed without prejudice Harrison's claims against Chlebowski, Cummins, and Martin in Count 1 and Harrison's claims against Shah and Martin in Count 2. (Doc. 75, 78). This left remaining Harrison's claim against Shah in Count 1.

On March 4, 2021, Shah filed his motion for summary judgment. (Doc. 84, 85). Harrison filed his opposition on April 5, 2021. (Doc. 86).[1] As the motion is ripe, the Court turns to the merits of the motion.

---

[1]   In addition to opposing the motion for summary judgment on the merits, Harrison claims that Shah's motion for summary judgment is untimely. The Court rejects that argument. Pursuant to Amended Administrative Order 261 and Second Amended Administrative Order 261, all deadlines in existence and pending as of March 21, 2020 were extended by 60 days. This applies to the deadlines in the Initial Scheduling and Discovery Order entered on February 6, 2020, which set the dispositive motion deadline as January 7, 2021. (Doc. 76). Accordingly, the deadline for filing the motion for summary judgment was extended to March 8, 2021, and Shah's motion is timely.

## II.  FACTS[2]

Harrison was incarcerated at Robinson from December 23, 2015 to January 15, 2020. Shah was the Medical Director at Robinson from January 2016 to August 15, 2020.

Harrison was diagnosed with Chron's disease in 2002, which was prior to his incarceration in the IDOC. At the time of his diagnosis, Harrison weighed 86 pounds.

The first time Harrison saw Shah was on January 5, 2016, for renewal of his low bunk permit. Shah renewed it. During this visit, Harrison did not make any complaints to Shah about active issues with his Crohn's disease. At this time, his condition was being treated with the appropriate medication, *i.e.,* sulfasalazine (intestinal anti-inflammatory), to help reduce the frequency of flare-ups.

In 2016, Harrison held a job as a porter. His duties included janitorial work such as cleaning the bathroom, sweeping, and taking out the trash five days a week.

In early 2017, Harrison began reporting symptoms of a Crohn's disease flare-up, which included nausea, vomiting, and diarrhea. A nurse contacted Shah, and he ordered steroids to decrease inflammation and to resolve the flare-up. Harrison acknowledged

---

[2] Harrison neither disputed the facts set forth by Shah nor presented his own set of facts in support of his claims. Thus, the Court adopts most of the facts set forth by Shah while presenting them in the light most favorable and drawing all reasonable inferences in Harrison's favor. As the Seventh Circuit recently reiterated, "[j]udges are not like pigs hunting for truffles buried in briefs[]" or the record. *Jeffers v. Comm'r of Internal Revenue*, No. 20-2056, 2021 WL 1181670, at *2 (7th Cir. March 30, 2021)(quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) and *Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 613 (7th Cir. 2006)). Rather, it is "[a]n advocate's job * * * to make it easy for the court to rule in his client's favor[.]" *Dal Pozzo*, 463 F.3d at 613. The Court is not required to hunt through the exhibits for the best evidence to support Harrison's position.

that initially the steroids helped his symptoms, and Harrison's condition was stable without complications. Occasional flare-ups are common with this disease.

On April 12, 2017, Harrison weighed 124 pounds.

While housed in Robinson, Harrison enrolled in a chronic clinic to monitor his Crohn's disease. In May 2017, at one of the clinics, Shah directed Harrison to take Glucerna nutritional supplements and ibuprofen for pain. In July 2017, Shah changed the nutritional supplement to Boost. Shah also routinely ordered Harrison's blood work to ensure that he was not bleeding. The lab results showed no signs of bleeding.

In August 2017, Harrison reported symptoms of another flare-up. Steroids were ordered again, and Shah requested blood work. The blood work showed Harrison was not bleeding.

On November 21, 2017, due to Harrison's reoccurring flare-ups, Shah directed Harrison to take Imuran, an immune modifying anti-inflammatory agent, to alleviate Harrison's symptoms. On December 26, 2017, when Imuran did not resolve Harrison's symptoms, Shah referred Harrison for a gastroenterologist ("GI") consultation. Shah also ordered Tramadol, a narcotic-like pain reliever, for pain and continued to monitor Harrison's blood levels. The GI referral was made at the time Plaintiff was no longer responding. The GI consultation was approved on January 26, 2018. Originally, Harrison was scheduled to see Dr. Greenberg on February 23, 2018. However, an appointment could not be arranged until March 7, 2018, due to a scheduling issue with Dr. Greenberg's office.

Dr. Greenberg examined Harrison on March 7, 2018 and recommended a colonoscopy and CT enterography, which is an imaging test that uses CT imagery and contrast material to view the small intestine. Harrison weighed 120 pounds at this time. Other than decreasing the steroid medication, Dr. Greenberg did not recommend any other changes to Harrison's medications. Dr. Greenberg also explained that he does not use narcotics to treat Crohn's disease.

The colonoscopy and CT were approved on March 12, 2018. The colonoscopy was performed on April 11, 2018 and showed a possible fistula opening, which is an abnormal connection or passageway that connects two organs or vessels. The colonoscopy also showed a stricture in the distal ileum or a narrowing of the third portion of the small intestine; it also showed an inflamed and pseudo polypoid mucosa in the neo-terminal ileum, *i.e.*, polyp like tags at the new distal end of the ileum. The CT was performed on May 2, 2018, after the facility reached out to Dr. Greenberg's office to place the correct order at the hospital. The CT results showed a chronic (not acute) complex fistula in the pelvis connected to the small bowel and colon. The aforementioned tests needed to be performed to examine the colon to determine the severity and extent of bowel involvement prior to making any further decisions about Harrison's treatment. A follow-up appointment with Dr. Greenberg was also approved.

On May 23, 2018, Harrison saw Dr. Greenberg at a follow-up appointment to address the colonoscopy and CT findings. At this time, Harrison weighed 113 pounds.[3] Based on the results, Dr. Greenberg recommended surgical intervention for the first time. The surgery was immediately approved. Although Harrison was stable, he was admitted to Carle Hospital on May 24, 2018, for surgery preparation. On May 30, 2018, Dr. Tantchou performed surgery on Harrison, *i.e.*, a small bowel resection with ostomy placement and fistula repair. Harrison's hospitalization was complicated by an anastomotic leak, *i.e.*, a leak where the surgeon reconnected the bowels, which required exploratory surgery and a drain placement. The post-operative complications that Plaintiff encountered were a direct result of the surgery that was indicated. An anastomotic leak and abdominal infection are known post-operative complications of bowel surgery.

Harrison's surgery helped his underlying condition. On June 21, 2018, after being discharged from the hospital, Harrison was placed in the infirmary at Robinson. The nursing staff and Shah monitored Harrison's recovery through November 8, 2019. Shah followed the specialists' recommendations. Harrison recovered and eventually began to gain weight.

Post-surgery, Shah placed ordered directing the nursing staff to change Harrison's dressings and colostomy bags. Shah was not involved in cleaning or changing colostomy

---

[3]   Dr. Greenberg noted that Harrison was an extremely poor historian as to his medical history.

bags or dressings, nor was he informed of any issues with the way they were being changed. In June 2018 and in September to October 2018, Harrison had an infection around his surgical incision, which was successfully treated with antibiotics.

Harrison had follow-up appointments with his surgeon's office on July 5, 2018, July 26, 2018, and October 25, 2018. He also had a follow-up appointment with both Dr. Tantchou and Dr. Greenberg on August 23, 2018. By August 2018, Harrison gained 20-25 pounds. An endoscopy, CT, and baseline laboratory tests were ordered, along with Azathioprine medication in preparation for starting Harrison on Remicade.

Harrison was approved for Remicade, which is an advanced biologic drug that is recommended and prescribed by GIs. Shah also ordered specialized tests to monitor Harrison's condition and the effects of this new, advanced medication.

On or about November 21, 2018, Plaintiff had a CT performed showing "overall marked improvement" from the prior study. On January 9, 2019, Harrison saw Dr. Greenberg. Dr. Greenberg recommended a colonoscopy. On March 13, 2019, Harrison had a colonoscopy, which showed no active inflammation. Dr. Greenberg diagnosed that Harrison's inflammatory bowel disease was in remission and recommended continuing Remicade treatment.

Harrison responded well to the Remicade treatment. Harrison currently has no active Crohn's disease symptoms, and his condition appears to be well-controlled. In June 2020, Harrison had a re-sectioning surgery without complications, and his colostomy bag

was removed. Harrison received all treatments recommended by Dr. Greenberg. Harrison had no complaints about Dr. Greenberg's care and agreed that his treatment helped his condition.

At times, Plaintiff did not take the medication Dr. Shah ordered for his Crohn's symptoms.

Shah has treated numerous individuals with Crohn's disease, including patients whose symptoms and disease progression was similar to Harrison's condition.

### III. LEGAL STANDARDS

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011).

As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

**B.**     **Eighth Amendment Deliberate Indifference**

The Eighth Amendment prohibits cruel and unusual punishments, and the deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)(citation omitted).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)(citation omitted). The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett*, 658 F.3d at 750. *Accord Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical

condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015)(citing *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994)(violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). *See also Hammond*, 123 F. Supp. 3d at 1086 (stating that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did[.]" *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *See Berry*, 604 F.3d at 441.

## IV. ANALYSIS

Shah contends that he is entitled to summary judgment as Harrison cannot set forth any evidence that Shah was deliberately indifferent to Harrison's alleged serious medical needs. Nor has Harrison produced verified medical evidence of a lasting injury caused by any alleged delay. Harrison counters that Shah was aware that he had frequent complaints of abdominal pain, bleeding from his stoma connected to a colostomy, insomnia, rectal bleeding, diarrhea, and weight loss. Despite this knowledge, Harrison

contends that Shah unreasonably failed to refer him to a specialist for 2 ½ years, which constitutes deliberate indifference. Thereafter, Shah was deliberately indifferent to his medical needs when he put Harrison at risk of further harm, which resulted in him contracting MRSA infections.

Important for the purposes of this motion is the well-established rule that a Court's consideration of claims of deliberate indifference must give deference to a medical professional's judgment regarding treatment decisions. This rule, however, does not hold if "no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)(quoting *Sain v. Wood*, 512 F.3d 886, 894-895 (7th Cir. 2008)). "But deference does *not* mean that a defendant automatically escapes liability any time he invokes professional judgment as the basis for a treatment decision. When the plaintiff provides evidence from which a reasonable jury could conclude that the defendant didn't *honestly* believe his proffered medical explanation, summary judgment is unwarranted." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016).

A delay in treatment can rise to the level of deliberate indifference if the plaintiff presents medical evidence that the delay "exacerbated the inmate's injury or unnecessarily prolonged his pain." *Perez v. Fenoglio*, 792 F.3d 768, 777-778 (7th Cir. 2015)(citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) and *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)); *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). The Eighth Amendment does not require that prisoners receive "unqualified access to health

care[.]" Rather, they are entitled only to "adequate medical care." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

First, the parties do not dispute, and the record reflects that Harrison did have an objectively serious medical condition. Thus, the Court focuses on whether Shah was deliberately indifferent to Harrison's medical needs.

Construing the evidence in the light most favorable to Harrison, the Court finds that Harrison has not established that Shah was deliberately indifferent to his medical needs. The record reveals that Shah provided appropriate treatment to Harrison. Harrison had Crohn's disease prior to his incarceration and was being treated for the disease in the IDOC before being seen by Shah initially in January 2016 for a low bunk permit renewal. At that time, Harrison did not have active complaints regarding his Crohn's disease. When Harrison reported flare-up symptoms, Shah administered steroids to help resolve his symptoms. Harrison was also enrolled in the chronic clinic for his condition. Shah monitored his symptoms and ordered blood work, nutritional supplements, and pain medication. In November 2017, after Harrison's flare-ups occurred more frequently, Shah added the medication Imuran to Harrison's treatment regimen. When Imuran did not help, Shah referred Harrison to a GI. The medical treatment provided by Shah simply was not the treatment Harrison wanted or demanded, but was clearly more than adequate.

Nor does the record contain evidence that Shah's treatment of Harrison's medical needs was so inappropriate or that Harrison's treatment was such a substantial departure

from accepted professional judgment, practice, or standards. There is also no evidence that Shah ignored or deliberately regarded Harrison. In fact, the evidence shows that Shah monitored and treated Harrison's condition. Simply put, there is no evidence that Shah was deliberately indifferent to Harrison's medical needs. Accordingly, the Court grants Shah's motion for summary judgment.

### V. CONCLUSION

Accordingly, the Court **GRANTS** the motion for summary judgment. (Doc. 84). The Court **FINDS** in favor of Vipin Shah and against Willie Harrison on Count 1 of the amended complaint. The Court **DIRECTS** the Clerk of the Court to enter judgment and to close the case.

**IT IS SO ORDERED.**

**Date: April 21, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.04.21 15:31:52 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**